Where are you my friend? Good morning, may it please the court, Kendra Hutchinson of Federal Defenders for the Appellant in this matter, Mr. Saeed. With the court's permission, I'd like to reserve two minutes for rebuttal, please. This case presents two issues relating to supervised release, one about substantive reasonableness, and one concerning legal error as to a condition. At the risk of sowing confusion, I'd actually like to start with the second issue first, which is the issue, the special condition issue. So here, the internet monitoring condition that was imposed by the district court was overbroad. It was not narrowly tailored, and it was a greater deprivation of liberty than necessary. And in addition, the court did not make individualized findings. In this case, this is an internet condition I think the court is familiar with. It has confronted it before, especially your honor, Judge Livingston. This is a condition that allows a probation to monitor all data on all electronic devices, including those that are not connected to the internet at any time, with or without suspicion. And especially, and particularly important, I think, in this case, is including geolocation data. And that was explicitly included within this condition. This is a very wide-sweeping condition. It allows probation to view such things as legal documents, medical documents, spiritual communications. It allows probation to look at devices that are not connected to the internet. And it allows probation to track Mr. Saeed when he leaves the house and goes anywhere and walks around. You know, the government really focuses in this case on whether or not this condition is reasonably related to the facts of this case. You know, and so, you know, to acknowledge this right up front, this is a case involving social media. That is how the offenses in this case were committed, using social media and using electronic devices. And so we have to sort of address this head on. That's right. And your client was on supervision at the time this offense took place. That's right, Your Honor. He was on parole. But the problem is, is that, you know, by saying that this case involves the use of, you know, the actus reus involves social media, it does not give carte blanche for such a wide-sweeping special condition. Now I would note, the reason that this is, is because there are other conditions that we are not contesting in this case that actually speak more directly and are more tailored to the facts of this case. So probation, you know, the district judge imposed a condition that Mr. Saeed needs to give all of his social media account information to probation. Probation has that and may search those social media accounts. In your client's case, he was in violation of a prior condition limiting his ability to have devices. And I just want you to address that fact because how does that inform a decision that, well, we're going to want to know the geolocation of every device of a person who has failed to abide by a device limitation condition? That's a very important question, Your Honor, absolutely. So first of all, I would say there's another condition in this case that the judge imposed that Mr. Saeed can only have one internet device. So we're not contesting that condition here, although, you know, in other cases, one defendant could. We are not contesting that here, number one. And number two, Your Honor, in terms of the facts of the violation, the earlier violation, the hiding of the other devices, those were hidden within the home. Mr. Saeed was not sort of traipsing about using devices in libraries or using devices on the street or anything. These were devices that were in the home. Probation is allowed under another separate condition that we are not contesting to search the home. And we believe that that is a narrowly tailored, given the liberty interest at stake, Judge, we believe that that is the narrowly tailored condition that speaks directly to that issue of recidivism that I think Your Honor is bringing up here and that we acknowledge and that the government brings up. This condition, however, the one we are speaking about, the electronic monitoring one, does not solve that problem, does not allow probation to prevent that particular transgression and deter that particular transgression. The conditions that speak to that, again, are the ones that allow the search of the home that require one device and that have Mr. Saeed turning over all of his account info. So we think that this particular condition, although we understand Your Honor's concerns and we acknowledge them and we know that the judge needs to speak to them, this condition does not do that. And so it's not reasonably related and it's not narrowly tailored. To the extent the district court did not explain its reason for this condition at or at any time, with or without supervision, by contrast to the others that are only when reasonable supervision, suspicion exists, is the appropriate action here a remand for an explanation? Yeah, I mean, I think that's what Your Honors have done. Your Honors generally vacate and remand for the court to consider whether to impose the condition and to explain it, if so. And if we don't like the explanation, as a prior adversary said or a lawyer said, we'll be back here. But yes, Your Honor, I mean, the judge needs to engage in this exercise here and even given the considerations. Yeah, thank you. Okay. And if I may very briefly, unless you're... I did have one question. Sure. You're a lot more familiar, I think, with the range of options out there than I am. If the court was concerned that relying on sort of self-report of social media accounts wasn't enough and wanted the ability to directly try to monitor social media or identify them on a device without opening the door to everything else, does that exist and what does it look like? Or is it a third-party monitoring situation? Yeah. I mean, this is not this case. So obviously, I'm not going to speak to this case. But I am familiar with sort of what's going on right now in the district courts and what probation is proposing. And it's different in the different courthouses, like in White Plains versus Eastern District versus here. And it's true, Your Honor, that there is some back and forth right now. And yes, judges can impose sort of conditions like that that may be more onerous as to one particular aspect, like social media. But there's technologically, I guess my question is, that there's a means to do that. Or is that why there's this third-party monitoring thing that happens sometimes? Because once you're... In order to scan for social media, you're essentially walking through everything else. That's true. That's true. Who knows what the temp files are? But I know that some of my colleagues have been discussing this a little bit more, what's going on. I do know that there is third-party software out there that is being used by some of the probation officers. And so that is possible. I don't know if exactly that is, but I do know that that is available right now in our district. But you're not aware of first-party? That's something where probation could be monitoring itself, but... I'm not aware of that being possible. Because unless I'm misunderstanding some aspect of the technology here, in a case where you have someone who's already been on supervision once and failed, and is reaching out to minors, it seems to me that simply having access or knowledge of the existing social media accounts leaves a sort of gaping hole. It can't be that difficult to open new accounts. So I can understand why a condition that doesn't require reasonable suspicion might be necessary in some cases. I'm not so much talking about your case, we don't have an explanation in your case, but why the need for monitoring without reasonable suspicion might be needed. And I have wondered, as my colleague suggested, if there's some way that that could be done effectively without just doing essentially what this condition requires. Yeah, and I think what's been interesting over the last year or so, in which the court has really grappled with this particular condition and what it means, is that I do think that we are a laboratory right now, Your Honor. And so I think you may start seeing cases in which more creative conditions are coming up and being litigated below or being discussed below. So I think you might be wishing for more than you want to take on right now, Your Honor. If I may very briefly address the substantive reasonableness issue very quickly, with Your Honor's permission. Oh, I'm a little over time. You mean the 10-year challenge? Yes, that's right. Is it waived? I mean, you urged the district court to impose strict supervision rather than a longer jail sentence, when I say you counseled below. Yeah. I mean, Your Honor, we do not believe this has waived at all, and we'd argue strenuously it's not. The government agrees that it is not waived by the plea agreement, so that's off the table. They are arguing that, as Your Honor pointed out, that because we focused so heavily on the term of imprisonment and acknowledged the fact that supervised release would ensue and that it would be a lengthy term, that that somehow waives it. We don't think so, Your Honor, here. Counsel did not say, judge, impose 10 years, judge, impose more than five years. Counsel says, judge, you can impose at least five years, and you should. No, you said stricter supervision would be better than a longer jail term for you. And it is very strict supervision, Your Honor, and just because counsel advocated this as a general matter does not mean we leave the specific claim to 10 years, judge, or more. Your Honor, I'm assuming it's not waived. Yes. I mean, your client has not abided by supervision conditions, and in that circumstance, how do we conclude that this is outside the range that was reasonably available to the district court? Yeah, I mean— He wants to make sure that your client, given the nature of his conduct here, which imperils minors, is supervised for quite a long time. I mean, judge, I think what we really focus on in the briefs, and I would just sort of very quickly deposit to Your Honor, this is an unusual case and outside the sort of the usual case that comes before this court because of this extraordinary rehabilitation, remorse, and very uncommon self-insight. And I know Your Honors are very familiar with the record, and I'm sure you've read his statement here and how he apologized directly to the victim, how he spent three years in MDC during the pandemic tutoring other inmates, how he, for the first time, got diagnosed and treated for his mental illness, and basically begged the court to put him in prison to keep treating him for his mental illness. I mean, this is an unusual case that really shows that the court should have weighed that a little more heavily and adequately balanced that in imposing the term of supervised release. That said, I think Your Honor believes it's waived, and if that's... Not necessarily. I just asked whether we should view it as waived, but I understand that you're arguing it's not. Okay. Thank you very much, Your Honors. Thank you. Good morning, Your Honors, and may it please the court. My name is Andrew Grubin, and I represent the United States. I was also the assistant U.S. attorney before the district court handling this case. This defendant was convicted of not only possessing over 100 images and videos of child pornography, but also for his conduct, attempting or successfully blackmailing and threatening minor girls across the country and also Canada. And he did so using all sorts of... He did so using electronic devices as well as social media. And he did so while on parole, having already been convicted of a similar offense and while not permitted to use electronic devices or at least devices connected to the internet. At sentencing, facing a guidelines custodial range sentence of 235 to 293 months custody, the defendant argued for a 115 month downward variance from the bottom of the guidelines. And he did so in part by knowingly and intentionally assuring the district court that it had the rights and supervisory lease conditions to effectively deter and monitor this defendant. And once the district court gave the defendant what he wanted, he has come to this court and asked it to find that the district court's imposed supervisory lease term and conditions are unreasonable. This court should reject his arguments. Well, shouldn't we get a reason for the district court to have imposed the without reasonable suspicion requirement on the final special condition of supervised release? Yes, Your Honor. I mean, I found it curious that there are two conditions that pertain to electronic devices and electronic communications for which searches are authorized only when there's reasonable suspicion. I mean, one might, for a moment, wonder whether there was a typo with respect to the last condition being without reasonable suspicion or whether the district court has a reason why it thought that had to be different. Yes, Your Honor. To answer Your Honor's first question, the district court should state on the records the reasons for special conditions of supervised release, as this court has said. But as this court has also said repeatedly in Betts and other cases, as long as the reasons are self-evident from the record, and I think here they are and I'm happy to get into that momentarily, I believe they are obvious from the record why these conditions are reasonably related to the goals of sentencing, that it's essentially a harmless error. As far as Your Honor's second question, the standard reasonable suspicion in order to search someone's home is the commonplace condition for going into an individual's home and going through their devices and so forth, as well as actually going into their social media and looking at conversations and all the like. The passive monitoring of all data, of data that comes through, just data on the electronic devices, would not be as effective if it had to be based on reasonable suspicion. The reasonable suspicion in these cases comes from that monitoring. In other words, if a defendant puts, the way that they get the reasonable suspicion to further investigate is from that monitoring. So if a defendant, here certainly someone who has already shown a willingness and intent to circumvent restrictions on their electronic devices, puts a legal document, puts his conversations with a 13-year-old girl in a document called, or a document, a file on the computer saying legal document, the person needs access to all of that in order to find these things and develop the reasonable suspicion. But the monitoring software nowadays isn't going through and saying what if they titled their documents. It's looking, it's getting right to data. And it's got, right, it's got hash values and other tools that it can use to get at the data that's problematic. And so one of the things I'm trying to figure out, there's the no probable cause. We know there are times, or reasonable suspicion, sorry. We know there are times when searches without reasonable suspicion may be permissible probation conditions. There's also just the sheer breadth of this condition. It essentially swallows up the entirety of his digital life, including his location, the geolocation. Are there any cases in which we have approved a condition that has both suspicionless and this scope? I've seen, it seems like in the third party monitoring context we might have dispensed with the suspicion. And in a more narrowly tailored context we might have dispensed, you know, narrowed the scope. But I haven't found anything that's broad on both fronts. So I think, Your Honor, there are other cases where there were similar, where this court has approved of similar conditions. And they're all, you know, slightly different depending on what district they come from. But, for example, in Ballone, this court, in that case, I believe it was all data. It was not limited by a time period. I don't believe it addressed, unfortunately, from reading it. It's unclear if it's suspicionless or not suspicionless. Of course, there are many cases, there are many times where this court has said suspicionless searches are fine. Another case would be Browder. Any and all activity, and that included key strokes and the like. That was third party monitoring, right? So the way that gets narrowed is the people who are monitoring might be able to wade through every aspect of your life. But all they're giving to the government is a narrower swath of information. Am I misunderstanding how that worked in Browder? My understanding, respectfully, I think in Browder, the third party monitoring was not as much of a distinction that the appellant has made it out to be. The court was explaining, the defendant in that case was concerned that it was a 2255 motion, that probation was going to get it. And they said, well, first of all, the court essentially said, this court said, probation's not going to get, not going to have it anyway because it's a third party monitoring program. And this court actually, in Rubel, explained this more eloquently than I am. And I'd just like to read what Rubel said about it, if that's fine. So Rubel stated, this court stated Rubel, where the defendant made the exact same argument as here. In Browder, we approved a similarly broad monitoring condition. Unlike in Rubel's case, however, Browder's computer activity was to be monitored by a party other than probation. We explained that this third party monitoring arrangement helped ensure that the monitoring remained narrowly tailored. Critically, however, Browder's objection to the computer monitoring condition as overbroad and overreaching was animated by his concerns, in particular, about the monitoring of computer files related to his pro se motion, which he was working on at the time. We concluded those concerns were misplaced because the third party would notify the probation office only if it detected contraband and would not convey any information related to Browder's 2255 motion. In other words, we held that in Browder's case, that the third party arrangement ensured that the monitoring condition was narrowly tailored to the specific end of preventing probation from receiving information about Browder's 2255 motion. We did not hold that such a filtering arrangement was necessary for similar conditions to be treated as narrowly tailored. Indeed, if anything, Browder highlights the fact that for the monitoring to be effective, some entity, whether probation or a third party, must be able to monitor a large swath of the defendant's internet activity. And I would just conclude by saying this also does go to the ripeness issue. While today it might be narrowly tailored for this defendant, based on these facts, for the probation to have access to all data, years from now, with technology evolving the way it is, there might be some other means. And that's what this court has said in similar cases. In the Coons case, which this court had recently decided, it was very different. There it was a legal issue. Impermissible delegation to probation. It was giving probation the authority to decide what future techniques and monitoring systems it wanted to use. And this court said, no, probation can't have that leeway. We can decide that now. How far are we from the end of the incarcerative term? I believe it's 2027, Your Honor. So about three-ish years, I believe. Which would be about the same, as this court has said, on the ripeness issue in other cases when dealing with that narrowly tailored question. Can I ask about the geolocation monitoring? Sure. The prior offense here was using contraband, electronic device, that he wasn't supposed to be in possession of, right? Correct. So how would geolocation monitoring assist in preventing violations of that sort? Sure, Your Honor. First, I don't believe that the reasonable relation standard is that exact thing. It has to address the exact thing that the defendant did. But I will say that it would be, based on the facts here, it is reasonable for the court and probation to want to know if this defendant, say, goes by a playground, or goes by a school, or his device pops up in Sunnyvale, California. And I would also remind the court that this is not... The defendant, for one, had the phone in different places within the house. He said to a friend, hashtag being smart. I'm not reloading to the fact he's not supposed to have a phone. That was on A96, I believe, of the record. And also, again, the defendant's prior... Not just the instant offense, but he has a prior record of exposing himself in public to girls. He has a prior record of hiding a camera, an electronic device, in his cousin's... shower. So knowing where the device is does reasonably address concerns related to this defendant. I mean, all this would be more helpful if there were an explanation in the record in the district court as to the necessity for both the absence of reasonable suspicion and the geolocation monitoring. I have a question about whether there is or is not an internal inconsistency in the special conditions. The penultimate condition requires the defendant to submit his house, his vehicles, papers, computers, other electronic communication or data storage devices to a search on reasonable suspicion. So presumably, you go in, you get the computer, you get the cell phone, you get whatever, you get everything that's on it. The final condition is that you can, I guess, in real time, monitor the information to get, capture and analyze all data processed or contained on the device without reasonable suspicion. That seems to me to give you even more authority because presumably you could destroy the computer or whatever, but here you can do it in real time without reasonable suspicion when to analyze the computer you need suspicion. Am I missing something or is there an internal inconsistency here? Your Honor, my understanding is that to have the monitoring program, the passive monitoring program that provides them access to data on the electric devices they're monitoring that are connected to the internet, that monitoring can be done without suspicion. Yes, I'm trying to figure out why would a court give this authority without reasonable suspicion but give the other, which seems to be very broad, but give a narrower authority only with reasonable suspicion? I believe, and this has been sort of the standard, both of these have been standard special conditions. No, I understand that possibility that we've just gotten used to them and we plug them in without thinking about it. I'm asking whether we need to think about it. I think for going into someone's home and searching their papers and effects and going around their actual apartment or their house. But it's other electronic communications or storage devices so I assume that's if it's on his person or if he's abandoned it somewhere you can search it but only with reasonable suspicion. I guess not if he's abandoned it but you know what I mean. Yeah, and I think included in that, like papers and effects, it would be also going and opening up computers, whether or not connected to the internet, going through USB external drives, going through any electronic device in the house and scouring it and fully opening it and doing a cellbrite and doing the kind of Why does that require reasonable suspicion and the real-time monitoring not? Because I think, and I can't remember the case, but I believe this court has explained the difference passive monitoring is the least intrusive is less intrusive than going into someone's home and searching through all of their devices and searching through all of their effects. So I think there is a distinction there. You spoke a moment ago about the importance of this because if the cell phone showed passing by the school if it showed whatever, are you really is the probation department really monitoring 24-7 like that? Not 24-7, Your Honor. My understanding, this isn't in the record so I can only speak to my understanding from speaking with probation is that they do is that they do look at they do check the location it's not like 24-7 but it is something that they do use. I'll also say that well no, I think that answers the question. I believe I'm over my time I'm well over my time so unless the court has any other questions I'll rest. Thank you. I'll be very, very brief. The government agrees that in response to your question Judge Raggi the government agrees that the district court should state on the record the reason for imposing a condition so basically agrees that there's an error they're just, the real issue here as they're saying is whether it's self-evident on the record. We just think there's too many questions here and I think Your Honor's questions have really pointed to that. There's too many questions let's get that remand, let's find out what was going on. Judge Robinson, you asked about cases like this and I think you're probably right to separate them into those two buckets I think the only case that's really on point is United States v. Salazar from July and this year that Judge Livingston was on that case is squarely on point, it's exactly the same condition slightly different facts of a crime and that's probably what's at issue here and this court vacated and remanded ripeness, I don't think this court needs to even touch it in this case. The government brought it up in a footnote that's really not, I don't think that much of an issue in this court. Let me ask about that if one of the concerns here let's assume that the reasonable relationship is apparent from the record but the reasonably no broader than reasonably necessary is the area around which we need more explanation from the district court and let's assume that the state of technology and the available options is a relevant consideration in answering the question whether this is broader than reasonably necessary doesn't it, I guess part of the reason I was trying to figure out how long a window we're looking at if the conditions were going to kick in in 20 years it would be sort of silly to spend time at some point, I think as an appellate judge, I'm on good records from district courts on what the options are, what the technology is, what level of intrusion necessarily comes with the territory and what doesn't but getting a record now for something that's going to happen in 20 years would feel like a waste of resources. On the other hand for something that's going to happen in two years things may not be moving that fast. Why is that wrong? Well I mean I do think that two or three years, if that's what we're looking at 2027 which as far as I know is correct, I mean I don't think that's too short of a time to start thinking about this quite frankly Your Honor. I don't think that this is not 20 years, I mean this is the point of time in which he's beginning to make re-entry plans and start thinking about halfway houses and things like that. So I don't think this is too soon, just in general. I also think that what's at stake here because there's a fundamental liberty interest is something sort of broader than technology and I do think this court can and should rule now this is an issue as to an intrusion upon his liberty interest and so this court can reach that. I think that's perennial that isn't subject to ripeness issues in terms of your questions Your Honor about making a record and really finding out what the state of technology is, you know I think that remand proceedings in this case could start that process. I mean I do think we're at just about the right time to start doing it I think that Your Honor. We can always seek a modification of a condition of supervised release from the district court So at or about the time he's scheduled to be released, if you want to propose that this monitoring be tailored more narrowly you could do that. That's right Your Honor, we absolutely could but we don't need to wait until then because the infirmities and the intrusion upon this protected interest is already apparent on this record that's before this court so we don't need to wait until then. You know, of course you know our office, we will if necessary Let's assume that kind of discriminatory monitoring is not available today and this goes back to the district court who says well given the nature of his criminal activity which seriously harmed a number of children and given his recalcitrance with respect to prior conditions of supervision, I do think that it's really necessary for him to be subject to constant monitoring and right now that can't distinguish You going to be back up here appealing that? Well, I mean let's put this in context too, Your Honor. I'm just trying to figure out how many times before your client is released to speak to each other. Yeah, no, and I mean let's put this in a bigger context. This is the Eastern District practice of not showing these conditions to counsel before they're imposed. So we never had the opportunity in the first place to sort of make this record. So, Your Honor, I don't want to say we'll never be back here, but there's a very different and a drastically different record that we can make now given this so let's hope we're not back here, Your Honor, but I think that if we were, the court would be a lot happier with the state of the record right? Like the court would be more pleased with the government. I mean the government would have been able to justify this too in a way that we're trying to do in a sort of post hoc kind of way right now. And that's why we think remand is necessary and again we don't want to be back up here, Your Honor. And just one last thing. In terms of the internal inconsistency in the conditions, I agree and I think that's just a product of like a rote, formulaic imposition and that this court shouldn't countenance it. That said Judge Radji, if you'd like to vacate that one too, we're all for it. That one's got the reasonable suspicion condition on it. Thank you very much. We've taken a lot of time. Thank you. Thank you both. Well argued.